UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS ACQUISITIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>PORANIA, LLC, JONATHAN KOOP, and JEFFREY S. DUNN,<br><br>Defendant. | Docket No.: 18-cv-17524<br><br>OPINION |

## WILLIAM J. MARTINI, U.S.D.J.:

Plaintiff Atlas Acquisitions, LLC. ("Atlas") filed this diversity action against Defendant Porania, LLC ("Porania"), Jonathan Koop, and Jeffrey S. Dunn, alleging under New Jersey law, breach of contract, fraudulent inducement, negligent misrepresentation, and violation of the New Jersey Consumer Fraud Act. The matter comes before the Court on Defendant Porania's motion to dismiss. ECF No. 25. For the reasons stated below, Defendant's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

### I. BACKGROUND

Plaintiff Atlas Acquisitions, LLC is a third-party purchaser of defaulted consumer debts. Am. Compl. ¶ 8, ECF No. 9. Defendant Porania, LLC is a purchaser of defaulted consumer debts, and seller to third parties like Atlas. *Id.* Jonathan Koop was the Chief Executive Officer of Porania, and Jeffrey S. Dunn was the Managing Member of Porania. *Id.* at ¶¶ 3-4. On December 17, 2015, Atlas and Porania entered into a Purchase and Sale Agreement ("the Agreement"), in which Porania agreed to sell to Atlas all rights, title, and interest in unsecured consumer account receivables, including unsecured consumer credit card accounts, lines of credit, installment loans, and other similar accounts owned by Porania. *See* Def.'s Mot., Ex. 2, ECF No. 25-4.

Atlas alleges that prior to execution of the Agreement, Koop, with the knowledge of Dunn, made false representations about their vetting of and due diligence concerning the validity of accounts that were the subject of the Agreement. *Id.* at ¶¶ 10-12. Atlas contends that because of a lack of due diligence or misrepresentations on the part of Porania, it purchased an assortment of loans, some of which lacked sufficient documentation, were issued by fictitious entities, or were issued by creditors not licensed

to make loans. *See id.* at ¶¶ 13, 19, 29. These defects, Atlas claims, prevented it from filing claims on accounts, required it to withdraw certain claims, subjected it to litigation costs including settlement payments,[1] and caused Atlas to lose business opportunities. *Id.* at ¶¶ 17, 22, 24, 27, 30, 34, 35. Now before the Court is Porania's motion to dismiss all four counts pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6). ECF No. 25.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975).

Although a complaint need not contain detailed factual allegations, "a plaintiffs obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## III. DISCUSSION

Defendant Porania moves to dismiss Atlas's Amended Complaint in its entirety for failure to state a claim and argues that: (1) Atlas's claims are barred by the entire controversy doctrine; (2) Atlas fails to state a claim for fraudulent inducement; (3) Atlas fails to state a claim for breach of contract; (4) Atlas fails to plead a cause of action for negligent misrepresentation; (5) Atlas fails to plead a cause of action under the New Jersey Consumer Fraud Act; and (6) Atlas's alleged damages fail to meet the amount in controversy requirement for diversity jurisdiction. The Court addresses each in turn.

### A. The New Jersey Entire Controversy Doctrine

Defendant Porania argues that Atlas's claims are precluded under New Jersey's entire controversy doctrine because they should have been raised before the United States Bankruptcy Court for the Southern District of Texas. Def.'s Mot. 10-13, ECF No. 25. New Jersey's entire controversy doctrine is that state's "idiosyncratic application of traditional

---

[1] In one matter, the Bankruptcy Court for the Southern District of Texas issued an Order to Show Cause, requiring Atlas, Porania, and another entity to show cause why they should not be sanctioned for the filing of proofs of claims without proper documentation. Am. Compl. ¶¶ 22-24, ECF No. 9.

2

res judicata principles" that "'embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy.'" *Rodrigues v. Wells Fargo Bank, N.A.*, 751 Fed. App'x 312, 316 (3d Cir. 2018) (quoting *Wadeer v. N.J. Mfrs. Ins. Co.*, 110 A.3d 19, 27 (NJ 2015)). The doctrine applies in federal courts "when there was a previous state-court action involving the same transaction." *Ricketti v. Barry*, 775 F.3d 611, 613 (3d Cir. 2015) (citing *Bennun v. Rutgers State Univ.*, 941 F.2d 154, 163 (3d Cir. 1991)). The entire controversy doctrine, however, "is not the right preclusion doctrine for a federal court to apply when prior judgments were not entered by the courts of New Jersey." *Paramount Aviation Corp. v. Augusta*, 178 F.3d 132, 138 (3d Cir. 1999) (conducting an *Erie* analysis and concluding that federal, not New Jersey, claim preclusion principles apply in successive federal court actions); *see, e.g., Bach v. McGinty*, No. 12-5853, 2015 WL 1383945, at *2 (D.N.J. Mar. 25, 2015) ("The entire controversy doctrine will preclude claims brought in federal court only if the preclusive judgment came from a New Jersey court."); *Yantai N. Andre Juice Co. v. Kupperman*, No. 05-CV-1049, 2005 WL 2338854, at *3 (D.N.J. Sept. 23, 2005) ("In this case, the issuing court in 2002 was the United States District Court for the District of New Jersey. Therefore, the New Jersey Entire Controversy Doctrine is inapplicable.").

This case involves the invocation of the entire controversy doctrine in federal court where the previous case was in another federal court—the United States Bankruptcy Court for the Southern District of Texas. Therefore, the entire controversy doctrine is inapplicable.

### B. Fraudulent Inducement

In order to plead a claim for fraudulent inducement in New Jersey, "a plaintiff must allege: '(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) a reasonable reliance thereon by the other person; and (5) resulting damages.'" *Ceballo v. Mac Tools, Inc.*, No. CIV.A. 11-4634 MLC, 2011 WL 4736356, at *4 (D.N.J. Oct. 5, 2011) (citing *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610, 691 A.2d 350 (1997)). Atlas argues that Porania made two specific fraudulent representations: (1) statements regarding the due diligence and vetting of the accounts at issue; and (2) the availability of supporting documents, status, and enforceability of the accounts. Am. Compl. at ¶¶ 10-12, 53. Porania argues that Atlas's fraudulent inducement claim fails for four reasons: (1) it is barred by the economic loss doctrine; (2) it is barred by the parole evidence rule; (3) Atlas has not sufficiently plead that Porania made a material misrepresentation; and (4) Atlas has not sufficiently plead that is reasonably relied on a misrepresentation. Def.'s Mot. at 19-25. The Court only addresses the first.

#### 1. Economic Loss Doctrine

Under New Jersey law, a plaintiff typically may not recover in tort for damages caused by a breach of contract: "The economic loss rule defines the boundary between the

3

overlapping theories of tort law and contract law by barring the recovery of purely economic loss in tort, particularly in strict liability and negligence cases." *Dean v. Barrett Homes, Inc.*, 406 N.J.Super. 453, 470, 968 A.2d 192 (App.Div.2009) (internal quotations omitted). If a plaintiff asserts that a defendant breached a duty owed to the plaintiff that is independent of the duties that arose under the contract, the economic loss doctrine does not apply. *See Montclair State Univ. v. Oracle USA, Inc.*, No. CIV.A. 11-2867 FLW, 2012 WL 3647427, at *5-6 (D.N.J. Aug. 23, 2012) (following line of cases necessitating fraudulent inducement claim be extraneous to the subjects addressed by the parties' agreement).

Porania argues that both of the alleged misrepresentations related to matters expressly addressed by the parties' agreement and, consequently, the economic loss doctrine requires that Atlas's fraudulent inducement claim be dismissed. Atlas argues that because both misrepresentations were allegedly made prior to contract formation, they are excepted from the economic loss doctrine. *See Fischell v. Cordis Corp.*, No. 16-CV-00928 (PGS), 2016 WL 5402207, at *8 (D.N.J. Sept. 26, 2016) (well-settled exception to the economic loss doctrine is fraud in the inducement of a contract). The threshold question regarding the economic loss doctrine's applicability is "whether the allegedly tortuous conduct is extraneous to the contract." *Id.* (internal quotations omitted).

The allegations that are the basis of fraudulent inducement—insufficient vetting of the accounts and the availability of supporting documents, status, and enforceability of the accounts—while allegedly made prior to contract formation, are not extraneous to the contract. Section 4.4 of the contract states, "Buyer agrees and acknowledges that this sale of Accounts is made 'as-is' without recourse or representation as to the character, accuracy or sufficiency or information or collectability, express or implied. . . . Buyer acknowledges that Seller, except as specifically set forth in this Agreement, does not represent, warrant or insure the accuracy or completeness of any information provided to Buyer or in any of the Account files." Def.'s Mot. Ex 2. Additionally, Section 3 of the Agreement contains "Seller's Representations and Warranties," and states, in relevant part, that Seller warrants "that all original Account information and data furnished to Seller by the originator of the accounts is true and accurate to the best of Seller's belief along with any other updated Account information obtained by Seller and provided to Buyer in connection with this Agreement." *Id.* Here, because the parties' agreement explicitly addresses the completeness and accuracy of information provided to Atlas regarding the enforceability of accounts, Atlas's tort claim for fraudulent inducement is barred by the economic loss doctrine.

### C. Breach of Contract

Atlas alleges that Porania breached the Agreement in three ways: (1) by failing to repurchase accounts when Porania was named in a show cause matter in the United States Bankruptcy Court for the Southern District of Texas; (2) by failing to repurchase accounts

when Porania was notified that their representations and warranties set forth in the Purchase and Sale Agreement were false; and (3) by failing to indemnify Atlas for losses arising from its alleged misrepresentation as to the enforceability of accounts. Am. Compl. ¶¶ 47-50.

1. **Obligation to Repurchase Accounts as a Result of the Texas Order to Show Cause Matter**

Section 2.6 of the Agreement provides, in relevant part, that Porania would be

> obligated to repurchase any Account pursuant to this Section 2.6, if . . . on or after the Closing Date, (i) there is a pending or threatened suit, action, arbitration proceeding or other legal proceeding or investigation relating to the Account or any Account debtor for such Account which names Seller or (ii) the Account is the subject of a preference or fraudulent conveyance action by a trustee in bankruptcy.

Def.'s Mot, Ex 2.

Porania argues that the order to show cause in the Texas bankruptcy matter does not "relat[e] to the Account or any Account debtor which names Seller" because the show cause matter "entailed Atlas and Porania's separate filing of proofs of claims in other matters, about which the bankruptcy court sought additional information." Def.'s Mot, 15. Defendant argues that Section 2.6 of the Agreement does not specify "the reason why Defendant was named in a legal proceeding or investigation matters, just that it relates to the Accounts." Pl.'s Resp., 12. At this juncture, the Court finds that reasonable minds could differ as to whether the show cause order in the Texas bankruptcy proceeding is captured by the language of Section 2.6 of the Agreement, but that Atlas has pleaded with sufficient specificity facts supporting its posited interpretation. *See Twombly*, 550 U.S. at 545 ("Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [plaintiff's claim].").

2. **Obligation to Repurchase Accounts as a Result of the Porania's Representations and Warranties**

Section 2.6 of the Agreement provides, in relevant part, that Porania would be

> obligated to repurchase any Account pursuant to this Section 2.6, if . . . on or after the Closing Date, (i) the Account was settled, compromised, paid in full or otherwise satisfied or (ii) any of the representations and warranties of the Seller contained in this Agreement are untrue or incorrect in any material respect . . .

Def.'s Mot, Ex 2.

Porania argues that Section 4.4 of the Agreement, which states that sale of accounts is "as-is" and that Buyer made its own independent investigation, forecloses Atlas's breach of contract claim on the basis of Porania's alleged "untrue representations." *Id.* Section 3 of the Agreement states that Seller warranted "that all original Account information and

5

data furnished to Seller by the originator of the accounts is true and accurate to the best of Seller's belief along with any other updated Account information obtained by Seller and provided to Buyer in connection with this Agreement." *Id.* Porania contends that "Plaintiff's specific allegations of misrepresentations do not relate to the 'information and data' Defendant received from the originator of the accounts." Def.'s Mot., 17. Atlas has alleged facts such that its allegations are sufficiently plausible. For instance, concerning a portion of accounts known as the Castle Peak Loans, Atlas alleged that "Defendant stated to Plaintiff that the media on the Castle Peak Loans was 'flawless' and '100% [] available.'" Am. Compl. ¶ 20. Consequently, Atlas's claim for breach of contract on the basis of misrepresentation is plausible.

### 3. **Obligated to Indemnify Atlas for Losses Arising from Its Alleged misrepresentation as to the Enforceability of Accounts**

Section 8.1 of the Agreement provides that

Seller agrees to indemnify, defend and hold harmless Buyer . . . from any and all claims, actions suits or other proceedings, and all losses, judgments, damages, expenses or other costs (including all fees and costs of legal counsel) incurred or suffered by Buyer Indemnified Parties by reasons of any of Seller's or its agents' wrongful acts or inaction, including without limitation any negligent or willful misconduct or violation of any applicable law, rule or regulation, in connection with the Accounts or otherwise.

Def.'s Mot, Ex 2.

In essence, Porania argues that it did not violate the indemnification section of the agreement because it committed no "wrongful acts or inaction." Specifically, Porania claims that Atlas's failure to ensure that the proofs of claim were filed with the necessary documentation was entirely its own, and that under the contract, it bore the risk. The Court finds that Atlas has pled enough facts to make its claim of entitlement to indemnification under the Agreement because of Porania's alleged "wrongful acts" plausible.

### D. Negligent Misrepresentation

Under New Jersey law, "[a] cause of action for negligent misrepresentation may exist when a party negligently provides false information." *Karu v. Feldman*, 574 A.2d 420 (1990). The Third Circuit explained that "[i]n New Jersey (as in all other jurisdictions) any tort of negligence requires the plaintiff to prove that the putative tortfeasor breached a duty of care to plaintiff and that plaintiff suffered damages proximately caused by that breach." *Highlands Ins. Co. v. Hobbs Grp., LLC.*, 373 F.3d 347, 351 (3d Cir. 2004).

Porania argues that Plaintiff is required and has failed to allege an independent duty outside of the context of the Agreement necessary to maintain its negligent misrepresentation cause of action. New Jersey law states that "a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." *S. Broward Hosp. Dist. v. MedQuist Inc.*, 516 F. Supp. 2d 370, 396 (D.N.J. 2007), aff'd in part, 258 F. App'x 466 (3d Cir. 2007) (internal citation omitted).

6

"[I]f there is no duty owed to a plaintiff independent of what the defendant owes plaintiff under a contract, a plaintiff may not maintain a tort claim (as a necessary element of the tort claim is absent)." *Id.* These cases cited by Porania, however, do not articulate an independent requirement for negligent misrepresentation claims, but rather, restate the previously discussed economic loss doctrine. Because Porania does not explicitly argue that Atlas's negligent misrepresentation claim is barred by the economic loss doctrine, the Court does not take up that question.

As Atlas argues, it has alleged that "Defendant negligently made incorrect and false statements regarding the Accounts including, but not limited to, Defendants' due diligence and vetting of the Accounts, the availability of supporting documents for the Accounts, and the status of enforceability of the Accounts," that Atlas "justifiably relied on the statements made by Defendant when making its decision to enter in the Purchase and Sale Agreement," and that Atlas "suffered significant damages as a result of the negligent statements made by Defendants." *See* Am. Compl., ¶¶ 59-61. Defendant owed a duty to Plaintiff because it was allegedly "foreseeable recipient who relie[d] on the information." *Highlands Ins. Co.*, 373 F.3d at 347. This is sufficient.

### E. New Jersey Consumer Fraud Act

The New Jersey Consumer Fraud Act ("CFA") prohibits "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate . . ." N.J. Stat. § 56:8-2. "[T]he CFA seeks to protect consumers who purchase goods or services generally sold to the public at large." *Cetel v. Kirwan Financial Group, Inc.*, 460 F.3d 494, 514 (3d Cir. 2006) (quoting *Marascio v. Campanella*, 689 A.2d 852 (N.J. App. Div. 1997)). Before the Court is whether, on the basis of the pleadings, it is plausible that Atlas's transaction with Porania for unsecured consumer account receivables is within the scope of the CFA.

Porania argues that the CFA only captures products and services sold to consumers in a popular sense, rather than complex arrangements, and does not reach transactions between experienced, sophisticated commercials entities. *Cetel v. Kirwan Fin. Grp. Inc.*, 460 F.3d 494, 514 (3d Cir. 2006). The New Jersey Supreme Court recently explained that while it is clear that not all "business-to-business transactions automatically fit the intendment of a sale offered by the public" within the CFA, "it is well established that the CFA is applicable to commercial transactions." *All the Way Towing v. Bucks County International, Inc.*, 236 A.3d 398, 405-06, (NJ 2019) (internal citations omitted). New Jersey looks to the following factors to determine whether the subject of the transaction falls with the CFA: "(1) the complexity of the transaction, taking into account any negotiation, bidding, or request for proposals process; (2) the identity and sophistication of the parties, which includes whether the parties received legal or expert assistance in the development or execution of the transaction; (3) the nature of the relationship between the parties and whether there was any relevant underlying understanding or prior transactions

between the parties; and (4) the public availability of the subject merchandise." *Id.* at 447-48. "[T]he availability requirement can be met by showing that any member of the public could purchase the product or service, if willing and able, regardless of whether such a purchase is popular." *Id.* at 447.

On this issue, Plaintiff alleges in its Amended Complaint merely that "Porania purchases defaulted consumer debts and sells them to third parties such as Atlas." Am. Compl. ¶ 8. While it is true that this Court has sometimes found that whether a commercial agreement falls within the scope of the CFA "is better left for summary judgment or trial," Atlas's complaint is devoid of any factual details hinting at the sophistication of the parties, whether extensive negotiation took place, or whether consumer defaulted debts are available to the public. *See Premier Health Assoc's, LLC v. Medical Technology Solutions*, No. CV 17-331 (JLL), 2018 WL 4043289, at *4 (D.N.J. Aug. 24, 2018). Without *something* more, the notion that defaulted consumer debts could qualify as "publicly available" is speculative at best. In light of the omission of any facts suggesting that this transaction falls within the CFA, the claim cannot proceed as pled.

### F. Amount in Controversy

As the party invoking diversity jurisdiction, Atlas bears the burden of proving, by a preponderance of the evidence, that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332; *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 506-07 (3d Cir. 2014). "In reviewing the complaint, 'the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.'" *Auto–Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 395 (3d Cir. 2016) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938)). The question "whether a plaintiff's claims pass the 'legal certainty' standard is a threshold matter that should involve the court in only minimal scrutiny of the plaintiff's claims." *Id.* (citing *Suber v. Chrysler Corp.*, 104 F.3d 578, 583 (3d Cir. 1997)).

Atlas alleges that it sustained "financial injury exceeding $1,200,000, as well as loss of business opportunities and damages to its image and reputation in the industry." Am. Compl. ¶ 42. Atlas contends that it lost approximately $580,000 as a result of the Texas Bankruptcy Class Action, *id.* at ¶ 30; by way of example, that it was unable to file claims related to the $70,000 portfolio, *id.* at ¶ 33; damages related to having claims disallowed, making payments to debtors for damages, paying debtors' attorneys' fees, withdrawing proofs of claims, and paying attorneys' fees for its own representation related to the Georgia Loans, *id.* at ¶ 17; damages related to settlement payments, attorneys' fees and costs incurred in resolving and defending against the Castle Peak lawsuits, *id.* at ¶ 24; damages related to settlement payments, attorneys' fees and costs incurred in resolving and defending against the Alabama lawsuits, *id.* at ¶ 27; and damages arising from the loss of business opportunities, *id.* at ¶¶ 35-37. These damages claims are related to counts which survive Porania's motion to dismiss. Consequently, because Atlas's claimed damages

8

exceed $75,000, this Court maintains diversity jurisdiction over Atlas's surviving claims. *See* 28 U.S.C. § 1332.

## IV. CONCLUSION

For the reasons stated above, Defendants' motions to dismiss is **GRANTED** in part, and **DENIED** in part. Specifically, Defendant's motion to dismiss is granted with regard to Counts II with prejudice, and IV[2] without prejudice, and denied with regard to Counts I and III.

Date: November 14, 2019

WILLIAM J. MARTINI, U.S.D.J.

---

[2] Count IV for Violation of the New Jersey Consumer Fraud Act is listed as Count III in the Amended Complaint. *See* Am. Compl. ¶¶ 62-68, ECF No. 9.